**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

MARTIN DELGADILLO,

        Petitioner,

v.                                  No. CV 10 -1055 JC/CG
                                        CR 09 -1862 JC

UNITED STATES OF AMERICA,

        Respondent,

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Petitioner Martin Delgadillo's *Brief in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255*, (Doc. 1) ("Petition"), and Respondent's *United States' Response to Petitioner Delgadillo's 28 U.S.C. § 2255 Motion*, (Doc. 7) ("Answer"). Petitioner did not file a reply to the United States' Answer. Petitioner claims that his attorney was constitutionally ineffective for providing him with false information as he contemplated accepting a plea deal from the United States Attorney's office, and that he failed to object to improper guideline enhancements at sentencing. (Doc. 1 at 3-5). Petitioner further claims that his attorney was ineffective for failing to appeal his sentence to the Tenth Circuit, and for failing to advise him of the adverse immigration consequences that his plea deal entailed. (*Id.* at 6-8). Finally, Petitioner believes that his attorney was ineffective for failing to object to the inclusion of certain juvenile offenses in Petitioner's pre-sentence report ("PSR"). (*Id.* at 9-12). Respondent claims that Petitioner has not established that he was prejudiced by his counsel's performance. For the reasons set forth in the opinion below, the Court

**RECOMMENDS** that the Petition be **DENIED ON THE MERITS**.

## I.    Background

In the early hours between June 10-11, 2009, Petitioner and two other co-defendants broke into several United States Forest Service law enforcement vehicles and burglarized them. (Doc. 7 at 1-2; Cr. 09-1862 JEC-1, Doc. 18 at 2). Petitioner and his friends took a substantial amount of sensitive property from the vehicles, including two AR-15 assault rifles and ammunition, hand-held radios, a laptop computer, sets of riot gear, and narcotics officer's training aides. (Cr. 09-1862 JEC-1, Doc. 18 at 2). The defendants also stole a lockbox containing eight grams of methamphetamine, one hundred grams of marijuana, and ten grams of black tar heroin. (*Id*.). Petitioner was arrested on or around June 17, 2009. (Cr. 09-1862 JEC-1, Doc. 5). Petitioner was  brought before United States Magistrate Judge Richard Puglisi on June 18, and attorney Gregory Acton was assigned to represent Petitioner that same day. (Cr. 09-1862 JEC-1, Doc. 6; Doc. 7). On July 7, 2009, a grand jury returned a four-count indictment against Petitioner and his co-defendants. (Cr. 09-1862 JEC-1, Doc. 18 ).[1] Petitioner was charged with conspiracy to steal United States property valued over $1,000 in violation of 18 U.S.C. § 371 (count one), stealing United States property valued over $1,000 in violation of 18 U.S.C. § 641 (count two), and malicious damage or destruction of United States Property in violation of 18 U.S.C. § 844(f) (count three). (*Id*. at 1-3). Petitioner was further charged with being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5) (count four). (*Id*. at 3-4).

---

[1] Petitioner's co-defendant, Carlos Sanchez, was charged with a fifth count in the indictment - illegal possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), 924(a)(2). (Cr. 09-1862 JEC-1, Doc. 18 at 4).

Petitioner initially pled not guilty to all of the charges, but he and his attorney entered into a plea agreement with the United States Attorney's office several months later. (Cr. 09-1862 JEC-1, Doc. 48). As part of the agreement, Petitioner agreed to plead guilty to counts two and four of the indictment - stealing United States property valued Over $1,000 in violation of 18 U.S.C. § 641 and being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). (*Id.* at 2). The penalty for each count was up to ten years (120 months) in prison, a mandatory three years of supervised release, a fine up to $250,000, and any restitution ordered by the court. (*Id.*). As part of the agreement, Petitioner waived his right to appeal his sentence so long as the sentence did not exceed the guideline advisory range. (*Id.* at 6). Petitioner further waived his right to collaterally attack his conviction under 28 U.S.C. § 2255 except on the issue of ineffective assistance of counsel. (*Id.* at 6-7). In return, the government stipulated that Petitioner had accepted responsibility for the crimes and that he should be afforded a three level reduction from the base offense level under the sentencing guidelines. (*Id.* at 4-5). The United States further agreed to dismiss counts one and three of the indictment, agreed not to bring any further charges arising out of the burglary, and agreed to a sentence at the low-end of advisory sentencing guidelines. (*Id.* at 7).

Pursuant to the agreement, Petitioner appeared before Magistrate Judge Puglisi on November 20, 2009, in order to plead guilty. (Doc. 7-2 at 3). Judge Puglisi engaged Petitioner in an extended colloquy in which Petitioner stated that he had reviewed the entire plea agreement both on his own and with Mr. Acton. (*Id.*). Petitioner stated that he understood the terms of the plea agreement and that he was pleading guilty of his own volition and that no one had forced him or induced him to plead guilty. (*Id.* at 5). Petitioner

acknowledged that the maximum penalty he could receive was ten years imprisonment for each count. (*Id.* at 5-6). He acknowledged that the stipulations contained within the agreement were not binding on the sentencing judge and he agreed with Judge Puglisi's statement that "if the sentencing judge chooses not to apply these stipulations . . . you will almost certainly receive a sentence much higher than you anticipate." (*Id.* at 6). Petitioner agreed that he did not know what his guideline range would be when he appeared for sentencing. (*Id.* at 7). Based on the colloquy, Judge Puglisi found that Petitioner was aware of the consequences of his plea, and that he had accepted the plea knowingly and voluntarily. (*Id.* at 10).

A pre-sentence report was then prepared by United States Probation Officer John Lovato. (Doc. 9-1). Based on the nature of the crimes charged in the indictment, the base offense level was twenty. (*Id.* at 11). The base level was increased by two points because a firearm was stolen during the commission of the crime, and further increased by an additional four points because the firearms were possessed in connection with another felony. (*Id.*). Petitioner's base level offense was determined to be twenty-six. (*Id.*). Based on several state convictions while Petitioner was a juvenile, Petitioner's criminal history category was calculated at level III. (*Id.* at 12-17). Based on a criminal history category of III and an offense level of twenty-six, Petitioner would have been facing 78 to 97 months imprisonment had he gone to trial. (*Id.* at 23). However, with the three level reduction for acceptance of responsibility, Petitioner's exposure under the guidelines was reduced to 57 to 71 months. (*Id.*)

Petitioner appeared before United States District Judge John E. Conway for sentencing on May 5, 2010. (Doc. 7-3 at 1). Prior to sentencing, Mr. Acton filed an

amended sentencing memorandum on Petitioner's behalf. (Cr. 09-1862 JEC-1, Doc. 63). The memorandum stated that Petitioner was only 18 years old when he was arrested, that he had been inebriated at the time of the crime, and the crime was instigated by his older co-defendant. (Doc. 7-3 at 2). At sentencing, Mr. Acton stated that he had reviewed the PSR with Petitioner and that he had no objection to the PSR. (*Id.* at 2). Judge Conway accepted Petitioner's plea agreement and he stated that he had reviewed the PSR and considered the advisory sentencing guidelines. (*Id.* at 4). Judge Conway then sentenced Petitioner to 57 months imprisonment on both counts, followed by three years of supervised release, with the sentences to run concurrently. (*Id.* at 5). Judge Conway also ordered Petitioner to make restitution to the United States Forest Service in the amount of $10,572.80. (*Id.* at 7). Six months following the entry of sentence, Petitioner filed the instant Petition.

## II.    Standards of Review

### i.    28 U.S.C. § 2255

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). A district court may grant relief under § 2255 if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255.

Because Mr. Delgadillo is proceeding *pro se*, the Court will liberally construe his pleadings. *See Haines v. Kerner*, 404 U.S. 519 (1972). This broad reading of a *pro se* litigant's pleadings does not, however, relieve him of the burden of alleging sufficient facts

upon which a legal claim may be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is not required to fashion a *pro se* litigant's arguments for her where her allegations are conclusory and lack supporting factual averments. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall*, 935 F.2d at 1110).

**ii.**    **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a habeas petitioner must satisfy a two-part test. First, she must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Judicial scrutiny of counsel's performance is highly deferential; thus, the petitioner must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.* at 689. Second, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)). In considering the two-prong *Strickland* test, the Court may proceed directly to the prejudice prong of the analysis if that is more convenient. *Id.* at 697 ("If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is easier to

6

resolve.").

### III.   Analysis

#### i.   Miscalculation of Sentencing Exposure

Petitioner asserts that his attorney was ineffective for giving him false information about his sentencing exposure under the advisory sentencing guidelines. (Doc. 1 at 3-4). Petitioner claims that Mr. Acton promised him that if he pled guilty, he would be facing a sentence of no less than 37 months and no more than 46 months. (*Id*. at 3). After the PSR was completed, Petitioner discovered that his sentencing exposure was actually 57 to 71 months. (*Id*.). The Court finds Petitioner's claim to be without merit.

Mr. Acton, in a sworn affidavit, asserts that he never promised a 37 to 46 month sentencing range. (Doc. 7-1 at 1). Mr. Acton states that

> It would be irrational for me to [promise that range]. Moreover, the Plea Agreement, reviewed with and signed by Mr. Delgadillo, states in paragraph 17 that there had been no promises as to what the sentence would be. I have always made it my practice to advise clients that I do not guarantee anything or make any promise with respect to the sentence, that the sentence is ultimately within the discretion of the judge.

*Id*. Furthermore, at Petitioner's change-of-plea hearing, Judge Puglisi noted that the plea agreement contained several stipulations with regard to the sentencing guidelines that might result in a lower guideline range for Petitioner. (Doc. 7-2 at 5-6). Judge Puglisi asked Petitioner whether he understood that the stipulations in the plea agreement were not binding and that "if the sentencing judge chooses not to apply these stipulations, for whatever reason, do you understand that you will almost certainly receive a sentence much higher than you anticipate?" (*Id*. at 6). Petitioner agreed that, notwithstanding the plea agreement, he did not know what his sentencing guideline range would be and that the

range might be higher than he anticipated. (*Id.* at 7).

Even if Mr. Acton erroneously thought that Petitioner's sentencing exposure would only be between 37 and 46 months, the Tenth Circuit has held that "[a] miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." *Unitea States v. Gigley,* 213 F.3d 509, 517 n. 3 (10th Cir. 2000) (quoting *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir.1993)) (internal quotation marks omitted). Additionally, the Tenth Circuit has held that where a defendant acknowledges during a plea colloquy that he does not know what his guideline range might be and that his attorney's sentencing predictions are uncertain, the mere allegation of prejudice is insufficient to satisfy the second prong of *Stricklana. Gordon*, 4 F.3d at 1571 ("Given the fact that Defendant pleaded guilty even after being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice."); *see also Fields v. Gibson*, 277 F.3d 1203, 1214 (10th Cir. 2002) ("This colloquy between a judge and a defendant before accepting a guilty plea is not pro forma and without legal significance. Rather, it is an important safeguard that protects defendants from incompetent counsel or misunderstandings. At these colloquys, judges take the time to insure that defendants understand the consequences of a guilty plea."). For that reason, the Court finds that, even if Mr. Acton had erroneously predicted a lower sentencing range, that does not suffice to establish the prejudice prong under *Stricklana*.

**ii.**   **Failure to Appeal**

8

Petitioner claims that his attorney was ineffective for failing to appeal Petitioner's sentence. (Doc. 1 at 3, 6-7). He cites to *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), and *United States v. Garrett*, 402 F.3d 1262 (10th Cir. 2005), for the proposition that an attorney is deemed to have provided ineffective assistance of counsel if he disregards a client's explicit instruction to file a direct appeal. (*Id.* at 6). Petitioner's claims are somewhat unclear in this regard. In the heading entitled "Claim Two: Counsel Rendered Ineffective Assistance of Counsel When He Failed To File A Requested Appeal[,]" Petitioner appears to suggest that he expressly instructed Mr. Acton to file a direct appeal. (*Id.* at 6). However, a closer reading of the Petition demonstrates that Petitioner never actually asked his attorney to file an appeal. Rather, Petitioner contends that Mr. Acton was ineffective because, (1) he told Petitioner that the appellate waiver in the plea agreement did not actually waive his right to appeal, and (2) Mr. Acton should have appealed because he knew that Petitioner was unhappy with his sentence. (*Id.* at 3 ("Petitioner asserts counsel reassured him that by him signing this plea agreement he was not foreclosing his right to appeal his sentence.")); (*Id.* at 6 ("Counsel related to petitioner that he was not waiving his right to appeal if he signed the plea agreement. Counsel was also aware that petitioner was unhappy with his sentence and expressed a willingness to appeal his sentence.")); (*Id.* at 7 ("Because Petitioner is unaware of any waiver in his plea agreement and expressed to his attorney that he was unhappy with his sentence, he is entitled to an out of time appeal based on ineffective assistance of counsel.")).

Mr. Acton contends that Petitioner never requested that he file a direct appeal. (Doc. 7-1 at 2 ("The last communication I had with Mr. Delgadillo was at the hearing in which his sentence was imposed. He never expressed to me a desire to appeal his

9

conviction or his sentence. The only discussion we ever had with respect to an appeal was concerning his waiver of the right to appeal.")). Mr. Acton claims he told Petitioner very clearly that, by entering into the plea agreement, Petitioner was waiving his right to appeal. (*Ia.* ("I advised [Petitioner] that he *was* waiving his right to appeal. I read the Plea Agreement to him, word-for-word, in the language he requested, English. The plea agreement contains the appeal waiver. I made sure he understood the agreement . . .")) (emphasis in original). Petitioner has not disputed Mr. Acton's assertions since he failed to respond to the government's Answer.  *See* 28 U.S.C. § 2248 ("The allegations of a return to a writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). In this case, where the Petition does not clearly state that Petitioner ever requested a direct appeal, the Court accepts Mr. Acton's assertions.

However, the finding that Petitioner did not request a direct appeal does not end the Court's inquiry. The Supreme Court has held that, even where a defendant does not explicitly request that an appeal be filed, counsel may still be ineffective if he failed to consult with a client about an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Counsel is required to consult with his client about an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480. In considering whether an attorney must consult about a potential appeal, the Supreme Court stated that

A highly relevant factor in this inquiry will be whether the conviction follows a trial or

10

> guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases where the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.

*Id.* In this case, Petitioner waived his right to appeal when he entered into the plea agreement with the government. (Cr. 09-1862 JEC-1, Doc. 48 at 6). By pleading guilty and waiving his right to appeal, Petitioner received the benefit of his bargain, since his sentencing exposure was reduced to 57 to 71 months, instead of the 78 to 97 month range he would have faced had he not entered into the agreement. (Doc. 9-1 at 23**)**.  It is true that Mr. Acton admits he did not speak with Petitioner about an appeal following sentencing. (Doc. 7-1 at 2). However, Mr. Acton failed to do so because he had already explained to Petitioner that the plea agreement waived his right to appeal. (Doc. 7-1 at 2). Mr. Acton's assertion that Petitioner understood he was giving up his right to appeal is supported by Petitioner's plea colloquy with Judge Puglisi:

> Q: Now, as I understand the waiver of appellate rights on pages six and seven [of the plea agreement], you are waiving any right you might have to appeal if the judge sentences you within the guideline range. Is that correct?
>
> A: Yes, sir
>
> Q: And you are making this agreement with the Government even though, as you stand here this morning, you do not know what your guideline range will be?
>
> A: Yes, sir
>
> Q: So, if your guideline range happens to be a little higher than you anticipate, do you understand, if the judge sentences you within the guideline range, you are giving up your right to appeal?
>
> A: Yes, sir

(Doc. 7-2 at 6-7).

In a case with nearly identical facts, the Tenth Circuit held that an attorney was not ineffective for failing to consult with his client about an appeal after the client knowingly entered into a plea agreement which contained a waiver of appellate rights. *See United States v. Macias*, 229 F.App'x 683 (10th Cir. 2007). In *Macias*, the defendant pled guilty to several counts of an indictment and, in return, the government agreed not to pursue a mandatory 25 year sentence on another count. *Id.* at 684. While the plea agreement contained a waiver of appellate rights, Macias eventually filed a *pro se* 2255 habeas motion alleging ineffective assistance of counsel for failing to file a requested appeal. *Id.* at 686. Macias had not explicitly asked his attorney to file an appeal, and his attorney never consulted with Macias about his interest in filing an appeal following sentencing. *Id.* at 686-87, 689. The Tenth Circuit found that Macias' counsel was not ineffective for failing to consult about an appeal because Macias had waived his right to appeal. *Id.* at 689.

> However, Boaten [Macias' counsel] testified he explained to Macias that if he chose to plead guilty, he would not be able to appeal. That is why Boaten never discussed an appeal with Macias after sentencing - he knew Macias had waived his right to appeal . . .
>
> ******
>
> [W]e conclude Boaten's failure to consult was not constitutionally ineffective because there was no duty to consult in this case. Macias' conviction followed a guilty plea and he received the bargained-for sentence . . . He also waived the right to appeal his sentence except in limited circumstances, none of which occurred. The facts demonstrate that Boaten had no reason to believe a rational defendant would want to appeal and, more specifically, that Macias would be interested in appealing the sentence he bargained for.

Much as in *Macias*, Petitioner received the benefit of the bargain by pleading guilty and reducing his sentencing exposure by approximately 20 months. As part of that bargain, he waived his right to appeal. Mr. Acton states that he took care to advise Petitioner of the effect of the appellate waiver, and Judge Puglisi confirmed that Petitioner understood the

12

nature of the waiver. Mr. Acton's failure to consult with Petitioner about an appeal following sentencing did not constitute ineffective assistance of counsel.

### iii.    **Immigration Consequences**

Petitioner asserts that Mr. Acton was ineffective for failing to advise him of the immigration consequences attendant with his plea agreement - namely that the plea deal would result in Petitioner being classified as an aggravated felon and subject to deportation. (Doc. 1 at 7-9).[2] Petitioner is a citizen of Mexico, and was a resident alien in the United States at the time of his conviction. (Doc. 7-2 at 8-9). At the time of the crime, Petitioner was legally residing in the United States on a non-immigrant work visa. (*Id.* at 9). Petitioner cites to *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), for the proposition that Mr. Acton's failure to advise him of the immigration consequences of his plea mandates that his conviction be vacated. The Court finds Petitioner's argument to be without merit.

Mr. Acton states that he informed Petitioner of the potential immigration consequences attendant with pleading guilty. (Doc. 7-1 at 1). Specifically, he told Petitioner that pleading guilty would prevent Petitioner from renewing his work visa, which Petitioner was trying to do at the time. (*Id.*). Mr. Acton further claims that, while he does not remember telling Petitioner that he would be deported as a result of the conviction, "I was at the same time working with another client on an ineffective assistance of counsel case for failure to inform that client in a prior case regarding deportation consequences . . . [s]o

---

[2] Petitioner's conviction for being an Alien in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5) qualifies as an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). Therefore, Petitioner was subject to deportation based on his plea deal. *See, e.g.*, *United States v. Ashraf*, 628 F.3d 813, 815 (6th Cir. 2011); *Petit-Frere v. United States Attorney Gen.*, 199 F.App'x 926, 929 (11th Cir. 2006).

it seems highly unlikely that I would not have so advised Mr. Delgadillo of such consequences . . ." (*Id.*). As stated above, Petitioner has not disputed Mr. Acton's assertions and, pursuant to 28 U.S.C. § 2248, the Court must accept uncontested factual assertions in the government's answer unless the Court affirmatively finds them not to be true. Mr. Acton's assertion that "it seems highly unlikely" that he failed to advise Petitioner of the immigration consequences of the plea is not the most forceful declaration. Nevertheless, the Court accepts Mr. Acton's assertions that he warned Petitioner of the immigration consequences that might arise from entering into the plea agreement.

Mr. Acton's contention that Petitioner was aware of the immigration consequences is supported by the fact that the PSR indicated that pleading guilty might result in Petitioner's deportation. The "Financial Condition" section of the PSR states that "[i]t is noted, the defendant is represented by Court appointed counsel and will likely be deported." (Doc. 9-1 at 22). The PSR does equivocate somewhat on the question of deportation, since the "Personal and Family Data" section of the PSR states that Petitioner's father may have physically abused Petitioner's mother and that "Immigration and Customs Enforcement officials indicated [Petitioner] may not be subject to deportation due to issues of previous family violence." (*Id.* at 19). Nevertheless, the PSR put Petitioner on notice that pleading guilty might expose him to deportation. The Tenth Circuit has noted in an unpublished opinion that, under *Padilla*, where a PSR puts a defendant on notice that his plea deal may expose him to deportation, the defendant cannot establish prejudice based on his attorney's failure to advise him of the same. *United States v. Gomez-Lugo*, No. 10-2104, 2011 WL 310532 at *2 (10th Cir. February 2, 2011) (unpublished).

Even if the Court were to assume that Mr. Acton never advised Petitioner of the

14

immigration consequences of the plea deal, the Court finds that Petitioner has still failed to establish that this failure prejudiced him under *Strickland*. As previously stated, even if Petitioner can show that his counsel's performance was objectively unreasonable, he must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. 668, 687-88 (1984). While Petitioner claims that Mr. Acton failed to advise him of the immigration consequences that would flow from the plea deal, he never claims that, had he known that the plea deal would result in his deportation, he would not have accepted the plea and would instead have gone to trial. (*See* Doc. 1 at 7-9). This stands in stark contrast to another section of his Petition, where he firmly states that, had he known that the government was seeking a specific enhancement under the guidelines, he would have refused to plea and would have gone to trial. (*Id.* at 4)

> Petitioner asserts that had he been aware that this enhancement was being sought he would of [sic] expressed a desire to withdraw from his plea and tired [sic] to renegotiate his plea agreement, ask the government for an extension of time to accept the plea agreement or reject the agreement in its entirety and exercise his constitutional right to a Jury Trial.

*Id.* Because Petitioner does not assert that, but for Mr. Acton's purported negligence, he would have refused to plead guilty and would have gone to trial, it is difficult for the Court to say that Petitioner was prejudiced by Mr. Acton's purported failure to advise him of the danger of deportation.

Furthermore, Petitioner cannot establish prejudice under *Strickland* because there is no reasonable possibility that, had he been advised of the immigration consequences, he would not have pled guilty and proceeded to trial. To prove that he would have refused to plead guilty and proceed to trial, Petitioner need not show that he likely would have been

acquitted at trial. *Miller v. Champion*, 262 F.3d 1066, 1073-1074 (10th Cir. 2001). Nevertheless, the Court can consider the amount and nature of the evidence of Petitioner's guilt in determining whether Petitioner has shown that there is a reasonably probability that he would have rejected the plea and proceeded to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("This assessment, in turn, will turn in large part on a prediction whether the evidence likely would have changed the outcome of a trial."); *Miller*, 262 F.3d at 1075 ("The district court adopted the magistrate court's finding that the evidence against Miller would probably have led the jury to convict him on charges of first-degree murder . . . the district court properly considered the strength of the state's case against Miller as evidence of whether he would have changed his plea.").

In this case, the Court does not hesitate to say that the evidence of Petitioner's guilt was substantial. The PSR relates that Albuquerque police detectives searched the burglarized Forest Service vehicles and that they recovered latent fingerprints which were a match for Petitioner. (Doc. 9-1 at 7).[3] The Albuquerque police arrested Petitioner and his two co-defendants the next day as they approached Petitioner's probation office. (*Id.*). The vehicle in which Petitioner was stopped was the same vehicle observed on security cameras leaving the burglary scene. (*Id.* at 8). Petitioner was given his Miranda warnings and he then admitted to burglarizing the vehicles. (*Id.*). Petitioner told the officers where he and his co-defendants had hidden the stolen items. (*Id.*). Carlos Sanchez, one of Petitioner's co-defendants, also gave a statement to police admitting that he and Petitioner

---

[3] It appears that law enforcement already had a copy of Petitioner's fingerprints on file due to Petitioner's multiple juvenile convictions. Petitioner was on probation at the time of the crime. (Doc. 9-1 at 7).

had burglarized the vehicles. (*Id.*).  Petitioner has never claimed that he did not burglarize the vehicles or that the police investigation or interrogation was improper. In his Petition, Petitioner freely admits that he committed the crime, "Although petitioners [sic] admitted to the crime, his older co-defendant took possession of one of the firearms almost immediately after the crime was executed. Petitioner admitted to authorities that he broke into the cars and stole the firearms . . ." (Doc. 1 at 5).

The sheer amount of incriminating evidence strongly supports the presumption that, even if Petitioner were aware of the danger of deportation, it was highly unlikely that Petitioner would have risked a higher sentence by facing the jury on all four counts of the indictment. Any suggestion that Petitioner would have refused to plead guilty had he been warned of the immigration consequences - a contention that is not even made in the Petition - is without merit. *Miller,* 262 F.3d at 1074-75; *see also Tahamtani v. Lankford*, 846 F.2d 712, 714 (11th Cir.1988) (rejecting petitioner's contention that he would have rejected the plea and proceeded to trial, in part, because the petitioner "has never contended that he was innocent of the crimes charged, nor has he offered any potentially meritorious defense"); *Yong Wong Park v. United States*, 222 F. App'x 82, 84 (2d Cir. 2007) (finding petitioner had not established prejudice under *Strickland* because, "even had [the petitioner] been aware of the immigration consequences of a plea, [he] would nonetheless have been faced with the strong likelihood of conviction at trial. He would also have been aware that such a conviction would trigger the same deportation consequences and would probably result in a longer sentence."); *Herrera v. Hynes*, No. 08 Civ. 1651, 2008 WL 5068608, at *3 (E.D.N.Y. Nov. 21, 2008) (in the absence of "evidence showing why [petitioner] would have risked a trial when the likely outcome was both exposure to

deportation and a substantial, preceding custody term . . . [petitioner] cannot raise a claim of prejudice under the second prong of *Strickland*").

### iv.   **Failure to Object to the PSR**

Petitioner claims that his attorney was ineffective for failing to object to the inclusion of the firearm enhancement under U.S.S.G § 2K2.1(b)(4)(A) in the PSR. (Doc. 1 at 4-5, 9-12). Petitioner believes that Mr. Acton should have objected to the firearm enhancement, both because Petitioner only possessed one firearm, and because the firearm enhancement was selectively applied to Petitioner, and not his co-defendants. (*Id.* at 4-5). He further argues that one of his juvenile convictions was improperly counted twice when his criminal history score was being calculated and that his attorney failed to object to the erroneous calculation. (*Id.* at 9-11). He similarly argues that his criminal history calculation was in contravention of Amendment 709 of the sentencing guidelines. (*Id.* at 11-12). The Court will address these arguments in turn.

### a.   **Firearm Enhancement**

In calculating Petitioner's offense level for the four charged crimes, Officer Lovato included a two point enhancement under U.S.S.G § 2K2.1(b)(4)(A). (Doc. 9-1 at 11).[4] Section 2K2.1(b)(4)(A) states that "[i]f any firearm (A) was stolen, increase [the offense level] by 2 levels . . ." U.S.S.G § 2K2.1(b)(4)(A). Petitioner acknowledges that the enhancement was applied to him because of the two stolen rifles. (Doc. 1 at 4 ("Petitioner

---

[4] In Respondent's Answer, Respondent states that Petitioner has objected to the application of both the two level enhancement under U.S.S.G § 2K2.1(b)(4)(A) and the four level enhancement under U.S.S.G § 2K2.1(b)(6). (Doc. 7 at 6-7). However, a closer reading of the Petition shows that Petitioner has objected solely to the application of the two level enhancement under U.S.S.G § 2K2.1(b)(4)(A). (*See* Doc. 1 at 4). The Court will restrict its analysis to the claims laid out in the Petition.

asserts that his sentencing range was enhanced 2 points [under 2K2.1(b)(4)(A)] because the P.S.R. Report stated that it was two firearms involved in the crime.")). Petitioner argues that the enhancement was improper because Petitioner possessed one of the rifles only momentarily, and that the enhancement may only be applied if the defendant steals more than one firearm. (Doc. 1 at 5 ("Although, petitioners [sic] admitted to the crime, his older co-defendant took possession of one of the firearms almost immediately after the crime was executed . . . This two point enhancement does not apply to the petitioner based on the number of firearms stolen.")). Petitioner's claim is without merit. By its terms, the 2K2.1(b)(4)(A) enhancement may be applied "[i]f *any* (A) firearm was stolen . . ." U.S.S.G § 2K2.1(b)(4)(A) (emphasis added). The Court has found no authority to support the argument that there is a numerosity requirement under U.S.S.G § 2K2.1(b)(4)(A). Therefore, Mr. Acton's failure to object to the enhancement cannot be considered deficient.

Petitioner also argues that the 2K2.1(b)(4)(A) enhancement was improper because it was only applied to Petitioner and not his other co-defendants, thereby resulting in disparate sentences. (Doc. 1 at 4). Federal judges are directed to try and ensure that "defendants with similar records who have been found guilty of similar conduct" should not receive excessively disparate sentences. 18 U.S.C. § 3553(a)(6). There is no evidence in the record to show whether Petitioner's co-defendants - Carlos Sanchez and Jorge Vidana Jr. - received the two point enhancement. However, even if they did not receive the enhancement, Petitioner has not established that Mr. Acton's failure to object based on this disparity constituted ineffective assistance of counsel.

With regard to Carlos Sanchez, there was no reason for Mr. Acton to object on the

basis of disparate sentences since Mr. Sanchez received a lengthier prison sentence than Petitioner did - 60 months, instead of 57 months. (Cr. 09-1862 JEC-3, Doc. 81).[5] On the other hand, Petitioner's other co-defendant, Jorge Vidana Jr., pled guilty to only one count of the indictment and was sentenced to two years of probation - a far lower sentence than Petitioner received. (*See* Cr. 09-1862 JEC-2, Doc. 96 at 2). However, this disparity is explicable based on the facts of the case. *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1223 (10th Cir. 2008) ("Disparate sentences . . . are permissible when the disparity is explicable by the facts of the particular case.") (citing *United States v. Haley*, 529 F.3d 1308, 1312 (10th Cir. 2008). Petitioner admitted to police that only he and Carlos Sanchez burglarized the Forest Service vehicles. (Doc. 9-1 at 8). Mr. Vidana, on the other hand, stayed in a car with another individual to act as a look-out and never burglarized the vehicles. (*Id.*). Only Petitioner and Mr. Sanchez possessed the rifles that were taken from the Forest Service vehicles. (*Id.*). The narrative in the PSR indicates that Petitioner and Mr. Sanchez decided how to dispose of the stolen items without input from Mr. Vidana. (*Id.* ("The individual identified [by Petitioner] as Leonardo Pardo asked for one of the stolen bullet proof vests; however [Petitioner] and Mr. Sanchez would not let him have one.")). Based on the facts of the crime, both Petitioner and Mr. Sanchez were charged with firearms offenses, whereas Mr. Vidana was not. (Cr. 09-1862 JEC-2, Doc. 18 at 1-3).

---

[5] Mr. Sanchez received a higher sentence because he pled guilty to the third count of the indictment - Malicious Damage or Destruction of United States Property, in violation of 18 U.S.C. § 844(f), which carries a mandatory sentence of five to twenty years imprisonment. 18 U.S.C. § 844(f); (Cr. 09-1862 JEC-3, Doc. 81). Petitioner, in contrast, was not facing any mandatory jail time. (Doc. 9-1 at 23).

Therefore, Petitioner and Mr. Vidana were not "similarly situated" and the disparate sentences were not objectionable. *See United States v. Contreras*, 108 F.3d 1255, 1271-72 (10th Cir. 1997) ("Co-defendants who are charged with and convicted of different offenses are not "similarly situated" with respect to the sentencing guidelines."). Moreover, Petitioner was sentenced on May 6, 2010, whereas Mr. Vidana was sentenced on May 4, 2011, more than a year later. (Cr. 09-1862 JEC-2, Doc. 96; Cr. 09-1862 JEC-1, Doc. 70). It is hard to imagine how Mr. Acton should have objected to Petitioner's sentence on the grounds that it was disparate from another sentence which had not yet been entered.

### b. <u>Juvenile Convictions</u>

Petitioner argues that several of his juvenile convictions should not have been counted towards his criminal history category. (Doc. 1 at 9-10). Petitioner first states that his juvenile convictions should not have been counted because U.S.S.G § 4A1.2(c)(2) states that "juvenile status offenses and truancy" are never counted when computing a defendants criminal history category. Petitioner misconstrues the definition of a "juvenile status offense." As stated by the Tenth Circuit, a juvenile status offense includes only those offenses "committed by persons under eighteen which are non-serious offenses, and which, regardless of the title of the offense, involved underlying conduct [which] would not have been criminal if committed by an adult." *United States v. Knox*, 193 F.App'x 780, 783 (10th Cir. 2006) (citing *United States v. Whitney*, 229 F.3d 1296, 1309 (10tt Cir. 2000). Petitioner's juvenile convictions include shoplifting, auto burglary, conspiracy to commit criminal damage to property, shooting from a motor vehicle, and conspiracy to commit auto burglary, none of which can be described as an offense which "would not have been

criminal if committed by an adult." (Doc. 9-1 at 12-16).

Petitioner next argues that one of his juvenile convictions was counted twice in calculating his criminal history category. Petitioner was charged with auto burglary in March of 2007. (Doc. 9-1 at 13). Petitioner was found to be a delinquent, but the charges were dismissed under a consent decree. (*Id.*). After Petitioner was arrested for shooting from a motor vehicle in November of 2007, the auto-burglary consent decree was revoked and Petitioner was placed on probation for two years. (Doc. 9-1 at 13, 15-16). Both the initial consent decree and the revocation of the consent decree were counted as separate offenses when his criminal history category was calculated. (*Id.*). The Court need not determine whether this double counting was inappropriate since it is clear from the PSR that this calculation did not result in any prejudice to petitioner. Based on six different juvenile convictions, Petitioner was found to have five criminal history points pursuant to U.S.S.G § 4A1.1(c). However, as stated in the PSR, only four points may be counted under this section of the guidelines, and therefore the fifth criminal history point was disregarded. (Doc. 9-1 at 17). Therefore, even if Mr. Acton thought that the two criminal history points arising from the auto burglary was improper, there was no need for him to object since one of those points was never counted. (*Id.*).

c.    **Amendment 709 Violation**

Petitioner argues that the PSR improperly counted his juvenile conviction for conspiracy to commit criminal damage in calculating his criminal history category and that Mr. Acton failed to object to this error. (Doc. 1 at 11-12). Petitioner cites to Amendment 709 to the sentencing guidelines, which "instructs sentencing courts, when computing a defendant's criminal history score, to treat as a single sentence all prior sentences that

22

were imposed on the same occasion, unless the underlying crimes were separated by an intervening arrest." *United States v. Waller*, 362 F.App'x. 926, 927 (10th Cir. 2010). Petitioner argues that he was sentenced for the conspiracy to commit criminal damage charge on the same day that he was sentenced for shooting from a motor vehicle and that the conspiracy charge should not have been counted in the PSR. (Doc. 1 at 11-12).

Petitioner's claim fails because the conspiracy charge was not counted for the precise reason identified in the Petition. (*See* Doc. 9-1 at 14 ("Conspiracy to Commit Criminal Damage to Property . . . [t]his offense was not assessed points because sentence was imposed on the same day as in case JR2007-678 and there was no intervening arrest."). There was no basis for Mr. Acton to object to the calculation of Petitioner's criminal history category, and Petitioner's ineffective assistance claims must fail.

## IV.   Recommendation

For the reasons set forth in the opinion, the Court finds that Petitioner's counsel was not constitutionally ineffective. The Court **RECOMMENDS** that Petitioner Martin Delgadillo's *Brief in Support of Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255*, (Doc. 1) be **DENIED ON THE MERITS**.

The Court further recommends that a certificate of appealability be denied.


_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

23